**HAUPRICHT BROTHERS, INC., Haupricht Brothers, a Partnership, Gene Haupricht, Larry Haupricht, and Arthur Haupricht**

v.

**The UNITED STATES.**

No. 273–85C.

United States Claims Court.

Dec. 19, 1986.

---

Wilbur C. Jacobs, Toledo, Ohio, for plaintiffs.

Denise Butler Harty, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant. Ralph Linden, Dept. of Agriculture, of counsel.

ORDER

ON DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT, AND ON PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND CROSS–MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge:

The plaintiffs complain in this case that the United States Department of Agriculture (USDA) wrongfully refused to grant them certain benefits which were requested for the 1983 crop year under the USDA's "payment in kind" (PIK) program.

The plaintiffs originally brought this suit in the United States District Court for the Eastern District of Michigan. That court, after concluding that it did not have subject matter jurisdiction of the litigation, transferred the case to the United States Claims Court as the court having jurisdiction. *Haupricht Brothers, Inc. v. United States,* No. 84CV–7405–AA (E.D.Mich., slip op., May 6, 1985) [Available on WESTLAW, DCT database].

The case is now before this court on the defendant's motion to dismiss or, alternatively, for summary judgment, and on the plaintiffs' opposition to the motion to dismiss and cross-motion for summary judgment.

*Background Information*

The USDA's PIK program was first inaugurated for the 1983 crop year. It was conducted under the authority of the Agricultural Act of 1949, *as amended* (7 U.S.C. § 1441 *et seq.* (1982)), the Commodity Credit Corporation Charter Act, *as amended* (15 U.S.C. § 714 *et seq.* (1982)), and regulations promulgated by the Secretary of Agriculture on January 14, 1983. On that date,

the Secretary amended Title 7 of the Code of Federal Regulations by adding to it a new part, Part 770 (48 Fed.Reg. 1696–97).

The new 7 C.F.R. § 770.1 stated in part as follows:

> The Department of Agriculture will enter into contracts with operators and producers who agree to devote acreage normally planted to wheat, corn, grain sorghum, upland cotton or rice to a conserving use in return for compensation in the form of the commodity normally planted on the acreage. * * *

The purpose of the PIK program, as announced by the Secretary, was to induce producers of the designated crops to divert additional acres of such crops from production, in addition to the acreage that was being taken out of production under the 1983 acreage reduction and cash land diversion programs for the named commodities. It was anticipated that, even with the 1983 acreage reduction and cash land diversion programs for the named commodities, the supply of such commodities would greatly exceed demand. 48 Fed.Reg. 1694.

A farmer participating in the PIK program could receive the quantity of the commodity due him upon request at any time within 5 months after the time when he normally harvested the particular crop. In addition, some cash could be earned under the program.

A farmer who wished to participate in the PIK program for the 1983 crop year was supposed to indicate his interest by submitting a proposed contract, on or before March 11, 1983, to the County Agricultural Stabilization and Conservation Committee (county committee) for the county in which the land was located (7 C.F.R. § 770.5, 48 Fed.Reg. 1697). If the farmer was dissatisfied with the determination of the county committee on the application, he could then obtain a review of such determination by appealing to the State Agricultural Stabilization and Conservation Committee (state committee) for the State in which the land was situated (7 C.F.R. § 780.4 (1983)). If the farmer was dissatisfied with the determination of the state committee, he could obtain a review of such determination by appealing to the Deputy Administrator of the Agricultural Stabilization and Conservation Service in Washington, D.C. (7 C.F.R. § 780.5 (1983)). No further administrative appeal was provided for in the USDA regulations.

### Undisputed Facts

The facts as to which there does not seem to be any substantial dispute between the parties will be set out in this part of the order.

The individual plaintiffs, Gene Haupricht, Larry Haupricht, and Arthur Haupricht, are the principals in the corporate plaintiff, Haupricht Brothers, Inc., and they are the partners in the plaintiff Haupricht Brothers, a partnership. Gene Haupricht (whose first name appears as Eugene in a number of the papers submitted to the court) is president of Haupricht Brothers, Inc.

At times pertinent to this case, Haupricht Brothers, Inc., operated various farm properties in Ohio and Michigan. Some of the farm lands in Ohio which the corporation operated were owned by Haupricht Brothers, the partnership.

In two successive 3–year leases dated 1978 and 1981, Haupricht Brothers, Inc., rented from DeMerritt and Company, a Michigan corporation, of which Robert DeMerritt was president, a farm located in Lenawee County, Michigan (the DeMerritt farm).

Only the second lease is involved in the present case. The 3–year term of this lease commenced on November 17, 1981, and it was to run through November 16, 1984. Haupricht Brothers, Inc., the lessee, was to pay as rent a total of $22,072 per year for 3 years. Each year, $7,357 was to be paid on or before March 1, and the balance of the annual rental, or $14,715, was to paid on or before November 15.

Haupricht Brothers, Inc., the lessee, failed to pay the first rent installment under the 1981 lease, which was due on March 1, 1982. On June 15, 1982, Haupricht Brothers, Inc., executed, and DeMer-

ritt and Company accepted, two promissory notes, each dated June 15, 1982. One promissory note was in the principal amount of $22,078, it was due on November 15, 1982, and it bore interest at the rate of 17 percent on the sum of $7,357 beginning March 1, 1982, no interest being payable on the balance of the principal. The other promissory note was in the principal amount of $10,000, it was due on November 15, 1982, and it bore interest at the rate of 17 percent on the sum of $3,333 beginning March 1, 1982, no interest being payable on the balance of the principal.

As of March 1, 1983, Haupricht Brothers, Inc., had failed to make the payments that were due on the two promissory notes dated June 15, 1982. Also, Haupricht Brothers, Inc., failed to pay the first rent installment for 1983 on or before the due date of March 1, 1983.

On March 8, 1983, Robert DeMerritt orally informed Gene Haupricht that he (DeMerritt) was repudiating the lease of the DeMerritt farm to Haupricht Brothers, Inc. because of the lessee's failure to pay rent. Then, on March 10, 1983, Robert DeMerritt sent a written notice of lease termination to Haupricht Brothers, Inc.

On March 8, 1983, the date of the oral notice concerning the revocation of the lease of the DeMerritt land to Haupricht Brothers, Inc., DeMerritt and Company applied to the county committee for enrollment in the PIK program for the crop year 1983 with respect to the DeMerritt farm. On March 9, 1983, unaware of the application filed the previous day by DeMerritt and Company, Haupricht Brothers, Inc., also applied to the county committee for enrollment in the PIK program for the crop year 1983. The Haupricht application was in the form of a proposed contract offering to withdraw the DeMerritt farm from the production of corn for the crop year 1983.

On March 11, 1983, Haupricht Brothers, Inc., paid the rent installment under the lease that was due on March 1, 1983.

The county committee approved the application of DeMerritt and Company, and denied the application of Haupricht Brothers, Inc., for enrollment in the PIK program for 1983. The reasons for the denial of the Haupricht application were stated by the county committee in a letter dated November 10, 1983, and addressed to Gene Haupricht, as follows:

1. Failure to make your spring 1983 payment on time. Your payment was due March 1st, 1983 and wasn't paid until March 11, 1983. (If anything is going to make a lease null and void why wouldn't that?)

2. Failure to pay on the promissory note[s] in November 1982.

3. Written notification of Termination of Lease sent to you on March 10, 1983.

Gene Haupricht appealed to the state committee from the county committee's actions with respect to the DeMerritt farm. Informal hearings on the appeal were held by the state committee. The decision of the state committee was sent to Gene Haupricht in the form of a letter dated March 9, 1984. The gist of the decision was to the effect "that you could not be considered a producer on the Robert DeMerritt farm in 1983 and therefore, would not be eligible for 1983 program benefits."

Also on March 9, 1984, the state committee wrote a letter to Robert DeMerritt, stating in part as follows:

The Michigan State ASC Committee had [sic] determined that you were in violation of the 1983 PIK program provisions concerning the fair treatment of operators, tenants, and sharecroppers.

The regulation provided landlords cannot displace or reduce the number of their tenants or farm operators in order to participate in government farm programs. Your farm shows history of being operated by other producers.

\*    \*    \*    \*    \*    \*

In view of the above it will be necessary that you refund all 1983 program benefits. You are also liable for liquidated damages which are assessed for PIK contract violations.

Gene Haupricht appealed to the Deputy Administrator of the Agricultural Stabiliza-

tion and Conservation Service in Washington, D.C., from the unfavorable action of the state committee on the application of Haupricht Brothers, Inc. An informal hearing was held in Washington on the appeal. The appeal was denied at the national level by means of a letter dated June 1, 1984, addressed to Gene Haupricht's attorney. This letter stated in part as follows:

As pointed out during the May 2 personal hearing in order for a person to be eligible for program benefits a person must be a producer on the farm. Since it is acknowledged your client was not a 1983 producer on the farm in question he is ineligible to receive program benefits. Further, a landlord's decision not to rent or continue to rent a farm is not a matter within the jurisdiction of ASCS nor the Department of Agriculture. Therefore, we have not accepted your request as an appeal with respect to leasing arrangements.

This concludes the administrative appeal rights afforded at 7 C.F.R. Part 780, Appeal Regulations.

*Discussion*

■ This court agrees with the U.S. District Court for the Eastern District of Michigan that the United States Claims Court has jurisdiction to consider and determine the cause of action set forth in the plaintiffs' complaint. It is clear from the complaint that the plaintiffs are asserting a claim against the United States based upon a regulation of the USDA, *i.e.,* 7 C.F.R., Part 770. This court's principal grant of jurisdiction from the Congress (28 U.S.C. § 1491(a)(1) (1982)) states in plain language that:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or *any regulation of an executive department* * * * [emphasis supplied].

In this connection, however, it must be noted that the prayer in the plaintiffs'

amended complaint asks "for a judgment against United States informing the Secretary of Agriculture that plaintiffs are qualified operators of said farm within the meaning of the PIK Program and entitled to the benefits applied for by plaintiffs in the form of cash and an allotment of corn, * * * [a]nd that the Court direct the Department to issue appropriate documents releasing corn owned by the Secretary and cash in accordance with plaintiffs' bid * *." As the defendant correctly points out, this court does not possess the broad equity powers that would be needed to issue such mandatory directives to the Secretary of Agriculture. This court is the successor to the trial jurisdiction formerly held by the United States Court of Claims; and, with relatively few exceptions, none of which is relevant here, this court's authority to grant relief is limited to the rendering of money judgments against the United States. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 2–5, 89 S.Ct. 1501, 1501–03, 23 L.Ed.2d 52 (1969).

Nevertheless, if the court were to determine that the plaintiffs have a valid cause of action under 7 C.F.R., Part 770, the court would clearly have the power to grant a money judgment to the plaintiffs for any cash, and for the money value of any corn, that they would be entitled to receive.

■ The defendant also calls the court's attention to 7 U.S.C. § 1429 (1982), and argues that it precludes the court from reviewing the final action of the USDA in denying the Haupricht application for benefits under the PIK program for 1983. Section 1429 provides as follows:

Determinations made by the Secretary under this Act [the Agricultural Act of 1949] shall be final and conclusive: *Provided,* That the scope and nature of such determinations shall not be inconsistent with the provisions of the Commodity Credit Corporation Charter Act. [Italics in original.]

Cases interpreting this statutory provision have held that it does not preclude judicial review to determine whether the Secretary (or his delegate) acted beyond the Secretary's statutory authority (*Carruth v. United States*, 224 Ct.Cl. 422, 437, 627 F.2d 1068, 1076 (1980); *Arlington Oil Mills, Inc. v. Knebel*, 543 F.2d 1092, 1101 (5th Cir.1976); *Gonzalez v. Freeman*, 334 F.2d 570, 575 (D.C.Cir.1964)), or whether he denied claimants their procedural rights (*Arlington Oil Mills, Inc.* at 1101; *Gonzalez* at 575), or whether he acted irrationally (*Carruth* 224 Ct.Cl. at 437, 627 F.2d at 1076; *Gibson v. United States*, 11 Cl.Ct. 6, 11 (1986)).

Accordingly, the defendant's argument that the court does not have jurisdiction of the present case is rejected.

■ On the basis of the undisputed facts, however, the court concludes that the final decision of the USDA in this case, rejecting the claim of Haupricht Brothers, Inc., for 1983 PIK benefits, stands the test of permissible judicial review.

In the first place, the 1983 PIK program was open only to operators of, and producers on, farms during that crop year (7 C.F.R. § 770.1(a); 48 Fed.Reg. 1696). Insofar as the DeMerritt farm was concerned, the corporate plaintiff, Haupricht Brothers, Inc., operated the farm, and produced crops on it, during the crop years 1979, 1980, 1981, and 1982. None of the plaintiffs, however, operated or produced a crop on that farm during the crop year 1983, the year that is involved in the present case. Consequently, none of the plaintiffs was eligible to participate in the 1983 PIK program with respect to the DeMerritt farm.

Furthermore, in order to qualify for benefits, operators and producers who entered into the 1983 PIK program had to assume and properly discharge certain prescribed obligations. One of these obligations was to devote acreage involved in the program "to an approved conserving use" during the crop year (7 C.F.R. § 770.2(a)(2); 48 Fed.Reg. 1696). None of the plaintiffs could or did devote any part of the DeMer-

ritt farm "to an approved conserving use" during the crop year 1983.

Accordingly, none of the plaintiffs qualified for 1983 benefits under the PIK program with respect to the DeMerritt farm.

It is clear, of course, from the undisputed facts that Haupricht Brothers, Inc., was ineligible to participate in—and thus was unable to qualify for 1983 benefits under—the PIK program because of the March 1983 action of DeMerritt and Company, through Robert DeMerritt, in terminating the 1981 3–year lease of the DeMerritt farm to the corporate plaintiff. If such action was unlawful, as asserted by the plaintiffs, the plaintiffs' recourse is against DeMerritt and Company or Robert DeMerritt, or both, but not against the United States.

### Conclusion

For the reasons stated previously in this order, the court concludes, from all the papers submitted to the court, that there is no genuine issue as to any material fact essential to the disposition of the case, and that the defendant is entitled to a judgment as a matter of law.

Accordingly, the defendant's alternative motion for summary judgment is granted, and the plaintiffs' cross-motion for summary judgment is denied.

The clerk will dismiss the complaint.

No costs.

IT IS SO ORDERED.