**Harry L. BOWLES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 303–88L.

United States Claims Court.

July 11, 1991.

---

Harry L. Bowles, pro se.

John S. Gregory, Washington, D.C., with whom was Richard Stewart, Asst. Atty. Gen., Environment and Natural Resources Div., for defendant.

ORDER

SMITH, Chief Judge.

After careful consideration of the Plaintiff's Motion for Summary Judgment, the Plaintiff's Motion for Declaratory Judgment Supplemental to Plaintiff's Motion for Summary Judgment, and the Defendant's Cross–Motion for Summary Judgment, hearing oral argument and an analysis of the law, the court must deny the motions.

## FACTS

The United States Court of Appeals for the Fifth Circuit transferred this case to the Claims Court. *Bowles v. United States Army Corps of Engrs.*, 841 F.2d 112 (5th Cir.1988). What follows is a brief factual summary. It is not intended to be complete.

Plaintiff Harry L. Bowles owns both a residential lot (Lot 29) and an adjacent 16 acre tract located on Follet's Island in Brazoria County, Texas. In March 1980, Bowles wrote to the Army Corps of Engineers (Corps) requesting a determination on whether he would need a section 404 permit for commercial development of the 16 acre tract.[1] The Corps conducted an on-site inspection. It determined that plaintiff required a section 404 permit for both tracts before development could occur.

On May 2, 1980, plaintiff submitted a section 404 application. In his application, the plaintiff proposed to build a private residence on Lot 29. The plaintiff's plan included a house to be built on pilings and the entire Lot 29 to be filled with sand. On July 3, 1980, the plaintiff withdrew his section 404 application, claiming that the Corps did not have jurisdiction. The Corps observed fill material on plaintiff's property in September, 1980.

On October 3, 1980, the Corps again advised the plaintiff of the section 404 permit requirement. On October 14, the Corps found concrete culverts on the plaintiff's property. Soon after, the Corps told the plaintiff to cease and desist from any further activity on the lot.

On April 9, 1981, the plaintiff brought suit in the United States District Court for the Southern District of Texas. The court ordered an abatement of the lawsuit until a permit application had been filed and reviewed by the Corps on November 23, 1982. On October 26, 1984, the Corps rejected the application as proposed by the plaintiff.

The district court trial resumed in November 1985. The court found that the wetlands area was under the Corps' jurisdiction and that the denial of the permit was neither arbitrary nor capricious. The district court also found that a taking had not occurred and that the plaintiff was not deprived of any economically viable use of his land. The plaintiff appealed to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed the district court's ruling as to the Corps' jurisdiction, but transferred the issue of a taking of the plaintiff's private property without just compensation under the Fifth Amendment to this court. *Bowles*, at 117.

## DISCUSSION

■ Notwithstanding the Fifth Circuit's actions, the Claims Court must decide its own jurisdiction in the first instance. *Diamond v. United States*, 657 F.2d 1194, 228 Ct.Cl. 493, 498 (1981). In this case, Mr. Bowles' claim is in excess of $10,000 and is based on the federal government's alleged taking of his property. The court does therefore have jurisdiction over this matter. 28 U.S.C. § 1491 (1988). Before addressing the parties' cross-motions, it is necessary to discuss the plaintiff's supplemental motion for declaratory judgment.

### *Plaintiff's Motion for Declaratory Judgment*

■ The powers of the Claims Court, like every court, are limited. This court cannot issue a declaratory judgment without explicit congressional authorization. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). One such example of the court's authority to provide declaratory relief is 28 U.S.C. § 1491(a)(3) (1988), which provides for a declaratory judgment prior to the award of a contract.

■ The purpose of a declaratory judgment is to provide preventive relief. It is not followed by a decree for money damages. *Massachusetts Bay Transp. Auth. v. United States*, 21 Cl.Ct. 252 (1990). In the instant case, there is no authorization from Congress that would allow this court to provide declaratory relief. Further, the plaintiff is seeking monetary damages for the government's alleged taking of his

---

1. Sections 301 and 404 of the Clean Water Act, 33 U.S.C. §§ 1311, 1344 (1988).

land. Thus, even were the court granted authority to provide declaratory relief in this case, the plaintiff's claimed injuries would not be remedied by nonpecuniary, preventive relief. Therefore, the plaintiff's motion for declaratory relief is denied.

### Cross–Motions for Summary Judgment

■ A case is ripe for summary judgment when there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Illinois v. United States*, 19 Cl.Ct. 180, 184 (1989). In the present action before the court, a genuine issue of material fact exists as to whether there has been a taking of plaintiff's property in violation of his constitutional right guaranteed under the Fifth Amendment.

Since the court finds that there are disputed material facts, it will be necessary to schedule trial. Mr. Bowles has chosen to be represented *pro se*. The court suggests that Mr. Bowles might find the following cases on Government Takings useful: *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986); *Penn Central Transp. Co. v. New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Florida Rock Indus. v. United States*, 791 F.2d 893 (Fed.Cir.1986); *Florida Rock Indus. v. United States*, 21 Cl.Ct. 161 (1990); and *Loveladies Harbor, Inc. v. United States*, 15 Cl.Ct. 381 (1988), 21 Cl. Ct. 153 (1990).[2]

■ *Connolly*, 475 U.S. at 224–25, 106 S.Ct. at 1025–26, lays out the three factors in a takings analysis: the economic impact of the regulation; the reasonable investment-backed expectations; and the character of the government action. For the plaintiff's benefit, a brief discussion follows on each of the three factors.

■ The economic impact of the regulation is measured by comparing the fair market value of the property before the government action with the fair market value of the property after the government action. *Florida Rock Indus. v. United States*, 21 Cl.Ct. 161 (1990). Consequently, a factual inquiry has to be made as to the value of the property before and after the governmental permit denial. This evidence must take into account all factors affecting the property: alternative, reasonable uses; legal restrictions other than the one alleged to be a taking, including but not limited to other federal agencies and state agencies; and any economic, locational, or other characteristics that affect a piece of property's market value.

■ Plaintiff contends that by denying his section 404 permit, the Corps has, in effect, interfered with his reasonable investment-backed expectations. Specifically, plaintiff maintains that he cannot build a residence on his property and that no reasonable alternatives were proposed to him at the time of permit denial. Plaintiff must prove that none of the government's suggested alternatives were reasonable. He must also show that it was reasonable to expect this property to be a buildable lot.

■ An inquiry into the character of the government action addresses the type, extent, and effect of the government's regulations on the plaintiff's property. The court urges the plaintiff to read the court's order denying summary judgment in *Loveladies*, 15 Cl.Ct. 381, particularly page 391 which discusses how this court examines the character of governmental action. The plaintiff must show that the government action went beyond the type of government land-use regulation that is a cost all citizens must pay for living in organized society. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413, 415–16, 43 S.Ct. 158, 159;

---

**2.** Since the alleged regulatory taking is based on the Clean Water Act, the plaintiff is urged to read Comment, "This Wetland Is Your Land, This Wetland Is My Land: Section 404 of the Clean Water Act and Its Impact on the Private Development of Wetlands," 4 *Admin.L.J.* 197 (1990) and Want, "The Taking Defense to Wetlands Regulation", 14 *Envtl.L.Rep.* 10,169 (1984).

160, 67 L.Ed. 322 (1922). Factors to consider include the governmental purpose behind the action. *Florida Rock Indus. v. United States*, 791 F.2d 893, 904 (Fed.Cir. 1986). For example, there is a traditional exception to finding an act a taking if it serves to abate or control a nuisance. Plaintiff's evidence here must be addressed to why the permit denial went beyond an ordinary land-use regulation and amounted to a destruction of his property rights.

## CONCLUSION

The court denies both parties' motions. A status conference is scheduled for 10:00 a.m., July 17, 1991 to discuss a trial date. The status conference will be by telephone call which the court shall place.